Dean G. Rallis Jr. (#94266)
    drallis@afrct.com
Chanel L. Oldham (#260561)
    coldham@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
    CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Movant and Creditor
WELLS FARGO BANK, N.A., successor by
merger with Wells Fargo Bank Southwest,
N.A., f/k/a Wachovia Mortgage, FSB, f/k/a
World Savings Bank, FSB ("Wells Fargo")

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No.: 12-33539 DM |
| RICHARD JOHN MULLIN, and GAYLE ANNE HARSMA | Chapter 13 |
| Debtors. | [The Honorable Dennis Montali]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN ORDER TO PROSECUTE LITIGATION IN NON-BANKRUPTCY FORUM**<br><br>Date:    May 29, 2014<br>Time:    9:30 a.m.<br>Place:   Courtroom 22<br>         U.S. Bankruptcy Court<br>         235 Pine Street, 22nd Floor<br>         San Francisco, CA 94104 |

Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest,

N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo")

and its successors and assigns respectfully submits the following Memorandum of

Points and Authorities in support of its Motion for Relief from Stay to Prosecute

Litigation in Non-Bankruptcy Forum.  The Motion seeks an Order terminating the

automatic stay to permit a civil action ("*Wells Fargo Bank, N.A., v. Richard J. Mullin, et al*", Case No. CIV1202442) pending in the Marin County Superior Court (the "Civil Action") to proceed to final judgment in that Court.

## STATEMENT OF FACTS

On or about November 15, 2006, Richard J. Mullin ("Mullin") and his wife, Gayle Ann Harsma ("Harsma," and with Mullin, collectively, "Debtors") executed and delivered to Wells Fargo's predecessor in interest, World Savings Bank, FSB, an adjustable rate note ("Note") memorializing a $465,000.00 loan made by World Savings Bank, FSB to Debtors. (Declaration of Michele Thomas ("Thomas Decl."), ¶ 4, Exhibit A). On November 15, 2006, Debtors executed a deed of trust that secured their performance of the Note (the "Deed of Trust"). The Deed of Trust was recorded on November 28, 2006, in the official records of the county recorder of Marin County as Document No. 2006-0073567. (Thomas Decl., ¶ 4; A true and correct copy of the Deed of Trust is attached to the Request for Judicial Notice ("RJN") as Exhibit B). World Savings Bank, FSB later changed its name to Wachovia Mortgage, FSB and is now known as Wells Fargo Bank, N.A., a national banking association, successor by merger to Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB. (Thomas Decl., ¶4, true and correct copies of judicially noticeable documents evidencing this merger and name change are attached to the RJN as Exhibits C-G).

Debtors failed to make their payments pursuant to the Note and Deed of Trust, so a Notice of Default was recorded in the Official Records for the County of Marin, on July 14, 2010, as Document No. 2010-0033650.(A true and correct copy is attached to the RJN as Exhibit H). The Notice of Default quantified a default amount of $21,652.59 as of July 13, 2010, and listed an initial default date of December 1, 2009. (RJN, Exhibit H).

On or around May 25, 2012, Wells Fargo filed a Complaint commencing the Civil Action against Debtors, Adam J. White ("White"), Stephen A. Easterly ("Easterly")

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Samuel Todd Segall ("Segall"), Sara E. Haller ("Haller"), A.M. Yajnik ("Yajnik"), and

2  Does 1 to 100, inclusive (collectively referred to herein as the "Civil Action Defendants").

3  (Thomas Decl., ¶ 6, RJN; Exhibit I ).  The Complaint alleges that Debtors and the other

4  Civil Action Defendants engaged in a scam which included the recordation of various

5  documents that purported to indicate that Wells Fargo's Notice of Default was

6  rescinded, the Deed of Trust had been modified to reflect that the Note was paid in full,

7  and the Deed of Trust reconveyed as if the underlying obligation had been paid in full.

8  (Thomas Decl., ¶ 6; RJN Exhibit I).

9  　　　Specifically, the Complaint identifies five documents that were fraudulently

10  recorded:

11  　　1.　　A document entitled "Modification of Deed of Trust" was recorded on

12  　　　　　January 7, 2011, as Document No. 2011-001346 (the "Modification").

13  　　　　　(Thomas Decl., ¶ 7; RJN, Exhibit J).  The Modification purports to modify

14  　　　　　the Deed of Trust to reflect an indebtedness of "$0.00".  (Thomas Decl.,

15  　　　　　¶ 7; RJN, Exhibit J).  The Modification was purportedly executed by Segall

16  　　　　　as "authorized agent/beneficiary" on behalf of Wells Fargo.  (RJN, Exhibit

17  　　　　　J).  Segall did not have the authority on behalf of Wells Fargo to execute

18  　　　　　the Modification.  (Thomas Decl., ¶ 7).  The Modification was also

19  　　　　　executed by White as "Trustee."  (RJN, Exhibit J).  White has never been

20  　　　　　the lawful trustee of the Deed of Trust and had no authority to act on

21  　　　　　behalf of Wells Fargo in executing the Modification.  (Thomas Decl., ¶ 7).

22  　　2.　　A document entitled "Substitution of Trustee" was recorded on January 7,

23  　　　　　2011, as Document No. 2011-001347 (the "Substitution").  (Thomas Decl.,

24  　　　　　¶ 8; a true and correct copy is attached to the RJN as Exhibit K).  The

25  　　　　　Substitution of Trustee purports to substitute White as trustee under the

26  　　　　　Deed of Trust in the place of Golden West Savings Association Service

27  　　　　　Co., the original trustee under the Deed of Trust.  (RJN, Exhibit K).  The

28  　　　　　Substitution was executed by Segall as "authorized agent/beneficiary" on

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

behalf of Wells Fargo. (RJN, Exhibit K). However, Segall did not have the authority on behalf of Wells Fargo to execute the Substitution. (Thomas Decl., ¶ 8).

3.    A document entitled "Notice of Rescission" was recorded on January 18, 2011, as Document No. 2011-003735 (the "Rescission"). (Thomas Decl., ¶ 9; a true and correct copy is attached to the RJN as Exhibit L.) The Notice of Rescission purported to rescind, cancel and withdraw the previously recorded Notice of Default, recorded on July 14, 2010, as Document No. 2010-0033650. (RJN, Exhibits H and L ). The Rescission was purportedly executed by Segall as "authorized agent/beneficiary" on behalf of Wells Fargo. (RJN, Exhibit L). Again, Segall did not have the authority on behalf of Wells Fargo to execute the Rescission. (Thomas Decl., ¶ 9).

4.    A document entitled "Full Reconveyance" was recorded on January 18, 2011, as Document No. 2011-003736 (the "Reconveyance"). (Thomas Decl., ¶1 0; a true and correct copy is attached to the RJN as Exhibit M). The Full Reconveyance purports to reconvey the Deed of Trust. (RJN, Exhibit M) The Reconveyance was executed by White as "Trustee" and "authorized agent" of the Trustee. (RJN, Exhibit M) White, however, did not have the authority on behalf of Wells Fargo or the trustee under the Deed of Trust to execute the Reconveyance. (Thomas Decl., ¶ 10).

5.    A document entitled "Agreement for Sale" was recorded on February 1, 2011, as Document No. 2011-007527. (Thomas Decl., ¶ 11; true and correct copy is attached to the RJN as Exhibit N.) The Agreement for Sale purports to evidence the sale of the Property by Debtors as sellers to Easterly as buyer. (RJN, Exhibit N). This Agreement for Sale was solely intended to convey the Property free of the Deed of Trust. (Thomas Decl., ¶ 11).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Each one of the five recorded documents discussed above are false and

2  fraudulent.  (Thomas Decl., ¶ 12).  They were executed by the Civil Action Defendants

3  who did not have the authority on behalf of Wells Fargo to execute such documents,

4  and they contain false information.  (Thomas Decl., ¶ 12).  For instance, at no point has

5  Wells Fargo consented to modify the loan to reflect an indebtedness of "$0.00."

6  (Thomas Decl., ¶ 12).  Moreover, at no point did Wells Fargo authorize a "Notice of

7  Rescission" or a "Full Reconveyance" to be recorded.  (Thomas Decl., ¶ 12).

8    On May 1, 2012, a foreclosure sale was held by Wells Fargo, the beneficiary

9  under the Deed of Trust, as evidenced by the trustee's deed upon sale, recorded on

10  May 8, 2012, as Document No. 2012-0038498 (the "TDUS").  (Thomas Decl., ¶ 13; a

11  true and correct copy of the TDUS is attached to the RJN as Exhibit O).  Wells Fargo

12  was the high bidder at said sale and thus became the owner of the Property.  (RJN,

13  Exhibit O.).  Accordingly, the Debtors have no interest in the Property or any liens

14  encumbering it.

15    The Debtors were served with process in the Civil Action on August 21, 2012.

16  (Declaration of Matthew J. Pero ("Pero Decl."), ¶ 3; a true and correct copy of the proof

17  of service is attached to the RJN as Exhibit P).  Debtor Harsma appeared in the action

18  and filed her answer on October 18, 2012.  (Pero Decl., ¶ 3; a true and correct copy of

19  the answer is attached to the RJN as Exhibit Q).  Two weeks later, Debtors filed this

20  instant bankruptcy on December 19, 2012.

21    Continuing with the Civil Action is imperative to Wells Fargo because, unless the

22  above described fraudulent instruments are canceled, they will damage Wells Fargo in

23  that the fraudulent instruments purport to divest Wells Fargo of its right, title and interest

24  in the Property.  Moreover, Wells Fargo has been damaged by the slander of title in that

25  Wells Fargo's title to the Property has been clouded and the marketability, saleability

26  and value of the Property has been impaired.  Wells Fargo is informed and believes,

27  and on that ground alleges, that Debtors and the Civil Action Defendants all knew that

28  the recorded documents were fraudulent but despite such knowledge executed and

95451/000722/00838907-2

recorded them in a deliberate and conscious attempt to defraud Wells Fargo of its interest in the Property. Due to the above mentioned conduct, relief from the automatic stay is imperative to protect Wells Fargo's rights and interest in the Property.

## DISCUSSION AND LEGAL STANDARD

Litigation in a non-bankruptcy forum may constitute "cause" for relief from the automatic stay under 11 U.S.C. § 362(d)(1). *See In re Tucson Estates, Inc.*, 912 F.2d 1162, 1169 (9th Cir. 1990); *Piombo Corp. v. Castlerock Prop.* (*In re: Castlerock Prop.*), 781 F.2d 159, 163 (9th Cir. 1986); *In re Plumberex Specialty Products, Inc.*, 311 B. R. 551, 559 (Bankr. C. D. Cal. 2004); *see also, In re A Partners, LLC*, 344 B.R. 144, 127 (Bankr. E.D. Cal. 2006).

The Court may consider the following factors in determining whether to permit litigation to proceed in a non-bankruptcy forum:

> (1) whether insurance coverage with a duty of defense is available to the debtor or the estate, or conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate; (2) whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter; (3) whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred; (4) whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter; (5) whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit; (6) whether the creditor has a probability of success on the merits; and (7) whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

(*Plumberex, supra* at p. 558, fn. 12, citing *In re Johnson*, 115 B. R. 634, 636 (Bankr. D. Minn. 1989).

The 9th Circuit Bankruptcy Appellate Panel explained the grounds for granting

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    relief from stay to proceed with litigation in a non-bankruptcy forum (citing *Plumberex*,

2    *supra*), as follows:

> Although Congress did not define cause, "courts in the Ninth
> Circuit have granted relief from the stay under § 362(d)(1)
> when necessary to permit pending litigation to be concluded
> in another forum if the non-bankruptcy suit involves multiple
> parties or is ready for trial." *Truebro, Inc. v. Plumberex
> Specialty Products, Inc. (In re Plumberex Specialty Products,
> Inc.*), 311 B.R. 551, 556–57 (Bankr. C.D. Cal. 2004), citing
> *Christensen v. Tucson Estates, Inc. (In re Tucson Estates,
> Inc.*), 912 F.2d 1162, 1166 (9th Cir.1990) ("[w]here a
> bankruptcy court may abstain from deciding issues in favor
> of an imminent state court trial involving the same issues,
> cause may exist for lifting the stay as to the state court trial");
> *Packerland Packing Co. v. Griffith Brokerage Co. (In re
> Kemble*), 776 F.2d 802, 807 (9th Cir.1985) (affirming an
> order lifting the stay to permit a creditor to pursue a
> conversion and fraudulent conveyance action pending in the
> federal district court)…
>
> As we noted in Santa Clara County Fair, the legislative
> history of section 362(a) indicates that judicial economy
> provides sufficient cause to lift the stay to permit the
> prosecution of actions pending elsewhere against a debtor:
> *[I]t will often be more appropriate to*
>
> *permit proceedings to continue in their place of origin, when
> no great prejudice to the bankruptcy estate would result*, in
> order to leave the parties to their chosen forum and to
> relieve the bankruptcy court from many duties that may be
> handled elsewhere. *Santa Clara County Fair*, 180 B.R. at
> 566, citing H.R. Rep. No. 95–595, at 341 (1977); S. Rep. No.
> 95–989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787,
> 5836 (emphasis added).

20    (*In re Quintrall* (9th Cir. B.A.P. 2007), 2007 WL 7540996 at *4).

21    In this case, there is a clear need for relief from the automatic stay to proceed

22   with the pending Civil Action.  Here, the Civil Action involves multiple parties.

23   Specifically, there are multiple named defendants in the Civil Action who were all

24   involved with the recordation of the fraudulent documents, many of whom are not

25   subject to the Court's jurisdiction.

26    Judicial economy favors proceeding in the state court to determine the validity of

27   the recorded documents.  The issues, principally the validity of the recorded documents,

28   require the determination of interests in real property, which are governed solely by

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

state law. The Civil Action involves defendants other that the Debtors, over whom this Court has no jurisdiction. There are essentially no bankruptcy related issues to be determined, as the Debtors no longer have any interest in the Property (either by way of the foreclosure sale, or by way of the alleged sale of the Property to Easterly). Proceeding with the Civil Action in the Superior Court will not prejudice the estate in any way but will prejudice the parties in the Civil Action who are not able to proceed with the prosecution and defense of the action due to the automatic stay. Applying factors cited in *Plumberex*, *supra*, sufficient "cause" exists to terminate the automatic stay to permit the Civil Action to proceed to final judgment in the Superior Court.

### CONCLUSION

Therefore, Wells Fargo seeks an order terminating the automatic stay to permit the Civil Action to proceed in the Superior Court and to proceed to final judgment, including any and all appeals. Wells Fargo also seeks an Order waiving the 14-day stay as provided by Bankruptcy Rule 4001(a)(3).

The Motion is based on these moving papers, as well as the accompanying declarations, RJN, and the Relief From Stay Information Sheet, filed separately and concurrently with this Motion.

In the event the Debtors, Debtor' counsel, or the Chapter 13 Trustee, fail to oppose the Motion or appears at the hearing, the Court may grant the relief requested and terminate the automatic stay permitting Wells Fargo to proceed with the Civil Action in the Marin Superior Court, without further notice or hearing.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Based on the above, Wells Fargo requests this Court enter an order terminating the automatic stay and permitting Wells Fargo to proceed to final judgment in the Civil Action, pending in the Marin County Superior Court, that the order include a waiver of the 14-day stay described by Bankruptcy Rule 4001(a)(3), and for such other relief as this Court deems appropriate.

Respectfully submitted,

Dated: May 6, 2014

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: ___/s/ Dean G. Rallis Jr.___
    Dean G. Rallis Jr.
    drallis@afrct.com
Attorneys for Movant and Creditor
WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP